

**JAMES CLARKSON**
**ACTING REGIONAL DIRECTOR**
**Attorney for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**3 World Financial Center – RM 400**
**New York, NY 10281**
**(212) 336-1020**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,      :
                        **Plaintiff,**      :
                                    :
          - against -      :
                                    :
MARC S. DREIER,      :
                                    :
                      **Defendant.**      :
-------------------------------------------------------------------x

08 Civ. _____ ( )

COMPLAINT

RECEIVED
DEC 0 8 2008
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff Securities and Exchange Commission for its complaint against Defendant Marc

S. Dreier alleges as follows:

## SUMMARY

    1.     This action arises out of fraudulent offers and sales of securities by Mark S.

Dreier, an attorney and the managing partner of Dreier LLP, a 250-attorney law firm with offices

in several cities, including New York.  Since at least October 2008, Dreier has been marketing

fake promissory notes to hedge funds and other private investment funds, and has closed at least

three sales.  He ensured his success in those transactions by creating an elaborate charade

designed to convince purchasers that the notes were real obligations of an existing New York

real estate development company. Along with the fictitious notes, Dreier distributed phony

financial statements and audit opinions, and recruited accomplices to play the parts of

representatives of legitimate companies purportedly involved in the transactions, even creating

dummy email addresses and telephone numbers to perfect the illusion of legitimacy.

2.  To date, Dreier has convinced at least two purchasers to invest approximately

$113.5 million in the phony notes, although one investor was successful in obtaining a refund of

its investment after it confronted Dreier with his fraud and threatened legal action. The funds

advanced by the two investors were deposited into an account in the name of "Dreier LLP

Attorney Trust Account," maintained and controlled by Dreier and/or Dreier LLP at JP Morgan

Chase (the "Dreier Account").

3.  Dreier has confessed to many of the deceptions he engineered in the course of this

scheme. Dreier has admitted, among other things, that (1) the notes were bogus, and that the real

estate development company had no knowledge of their existence; (2) the financial statements

and audit opinions were total fabrications; and (3) he knew that at least one investor had paid

him millions for worthless securities.

4.  Through this conduct, and that detailed below, Defendant has violated Section

17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5.

5.  Unless restrained and enjoined by the Court, Defendant will continue to engage in

the transactions, acts, practices and courses of business alleged herein, and in transactions, acts,

practices, and courses of business of a similar type and object.

6.  By this action, the Commission seeks: (a) permanent injunctive relief; (b)

2

disgorgement and prejudgment interest; (c) civil penalties; (d) emergency and preliminary relief including (i) the appointment of a Receiver over Defendant's assets, including the Defendant's interests in the Affiliated Entities (as defined in the Proposed Order to Show Cause); (ii) a temporary restraining order and preliminary injunction; (iii) asset freezes; and (iv) orders requiring Defendant to provide a sworn accountings, permitting expedited discovery, and prohibiting the destruction of documents; and (e) such further relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).  This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 21(d) of the Exchange Act, 15 U.S.C. §§ 78u(d).

8.      Venue lies in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Southern District of New York.

9.      Defendant, directly or indirectly, singly or in concert with others, has made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## THE DEFENDANT

10.     **Marc S. Dreier**, 58, is a resident of Manhattan, and an attorney licensed in the

3

state of New York. He is the founder and managing partner of Dreier LLP. Prior to founding

Dreier LLP in 1996, Dreier was the head of the litigation practice at a large national law firm in

New York, and a partner in another prestigious firm, and has more than thirty years experience

practicing law. Dreier is a graduate of Yale College and Harvard Law School. Dreier

specializes in commercial litigation, including securities litigation. Dreier LLP is a 250-attorney

law firm, with its principal office in Manhattan, and additional, affiliated offices in Los Angeles

and Santa Monica, California; Albany, New York; Stamford, Connecticut; and Pittsburgh,

Pennsylvania.

## FACTS

11.    Since at least October 2008, Dreier has been offering the bogus securities of

unwitting legitimate issuers to hedge funds. The facts set forth here detail certain of his offers

and sales of the fictitious notes of one such purported issuer, a New York-based real estate

development company (the "Developer"), and a former client of both Dreier LLP and Dreier

himself. Since at least October of this year, Dreier has approached at least three different hedge

funds with an offer to sell them, at a deep discount, various short-term, unsecured promissory

notes supposedly issued by the Developer. Two of the investment funds agreed to purchase the

notes and forwarded approximately $113.5 million to the Dreier Account in payment. A third

was offered the notes, but declined to participate. All of the offers were accompanied by

documents that Dreier knew or was reckless in not knowing were fabricated and/or forged. For

two of the investment funds, Dreier set up calls with and created dummy email addresses for

Dreier accomplices who posed as representatives of legitimate entities, all in an effort to

convince the prospective purchasers that the deals were real. Dreier made each of the offers

even though he knew or was reckless in not knowing that the Developer had never issued them,

4

had not authorized Dreier to market them and indeed knew nothing of their existence or Dreier's offers or sales.

**Dreier's Sale of the Notes to Hedge Fund I**

12. On October 13, 2004, Dreier contacted an attorney for Hedge Fund I and falsely told him that he was representing the Developer in marketing the Developer's notes. Dreier further falsely stated that the notes he was offering were currently held by institutional investors who needed to sell their investments quickly to meet various financial obligations. Dreier also falsely stated that the Developer had enlisted his help in finding new buyers for the notes so that the Developer would not have to redeem them. At the time he made these false statements, Dreier either knew, or recklessly disregarded, their falsity. Dreier asked the attorney whether he had any investment fund clients who might be interested in acquiring some of the notes at the discount the current holders were willing to accept. Dreier then sent the attorney various offering materials that set out the terms of an offer of the Developer's notes so that the attorney could forward them to interested clients, including Hedge Fund I. To his email to Hedge Fund I's attorney, Dreier attached information describing the Developer, a "form" note and related agreements, and "audited financial statements."

13. Dreier did not tell Hedge Fund I's attorney that the notes were bogus and were currently held by no one, that the "audited financial statements" were fabricated, or that the Developer had never issued the notes or authorized Dreier to market them, despite the fact that Dreier knew of these matters at the time of his conversation with Hedge Fund I's attorney. Hedge Fund I's attorney forwarded Dreier's offer and offering materials to Hedge Fund I.

14. Hedge Fund I's analysts began to review the possible notes purchase. In the course of their analysis, Dreier forwarded to them audit letters which bore the forged signature of

5

the Developer's auditor, and which were printed on purported stationery of the Developer's auditing firm. Dreier did not tell anyone at Hedge Fund I that any of the documents he had provided were fabricated and/or forged, despite his knowledge of these matters.

15. As part of its due diligence, Hedge Fund I employees asked Dreier to produce a representative of the Developer who was familiar with the Developer's finances, to provide the names of the institutional investors who were selling the notes, and to furnish the names of other note holders. In response, Dreier forwarded by email four notes purportedly issued by the Developer to three separate investment funds, and included copies of Dreier LLP opinion letters, signed by Dreier, and the corporate certificates that he represented supported the original note purchases. All of the documents forwarded by Dreier to Hedge Fund I in that email were fabricated by Dreier or sent by him with knowledge that they were fabricated.

16. Also in response to Hedge Fund I's due diligence request, Dreier set up a call between Hedge Fund I's analysts and a person posing as the Developer's CEO. Dreier gave the analysts the number at which the "CEO" could be reached, and during the call, the "CEO" gave them his email address and several phone numbers at which they could reach him with further questions. The "CEO" was in fact a Dreier confederate, and the email address and phone numbers provided by the "CEO" had been set up by Dreier and had no real connection to the Developer.

17. Each of these deceptions – the original notes and supporting documents, the contacts with imposters – was intended by Dreier to convince Hedge Fund I that the notes were real when he knew or was reckless in not knowing that they were not.

18. Ultimately, Dreier's efforts to convince Hedge Fund I that the notes were real and were good investments succeeded. On October 24, 2008, Hedge Fund I wired $83.6 million to

6

the Dreier Account in payment for four of the Developer's unsecured notes, purportedly paying interest of 11% to 11.5% per year and with a combined face value of $110 million. On November 6, 2008, Hedge Fund I made an additional purchase of a $25 million Developer note for $16.25 million. Hedge Fund I transferred the November purchase money to the Dreier Account as well.

## Dreier's Sale of the Notes to Hedge Fund II and Offer of the Notes to Hedge Fund III

19.     At around the same time as he was offering the notes to Hedge Fund I, Dreier was offering other phony Developer notes to Hedge Funds II and III. In statements detailed below, Dreier admitted that he made misrepresentations to Hedge Funds II and III similar to those he made to Hedge Fund I. While he was also successful in closing sales to Hedge Fund II, Hedge Fund II convinced Dreier to return all of its investment after it confronted him with its suspicions that the notes were bogus.

20.     Sometime in October 2008, Dreier learned that Hedge Fund II was interested in purchasing the Developer's notes. With Dreier's knowledge, if not at his direction, Hedge Fund II had been provided with the same offering package as Hedge Fund I, including the form of the bogus "note," the false financial statements of the Developer and its auditor's fabricated and forged opinion letters. With Dreier's permission, Hedge Fund II forwarded the offering package to Hedge Fund III to solicit its interest in participating in the purchase of the notes with Hedge Fund II.

21.     Seeking additional information about the Developer's financial statements as part of its due diligence, a representative of Hedge Fund III contacted the audit partner whose purported signature appeared on the Developer's audit opinion letters and provided the audit partner with the forged audit letter. The audit partner immediately recognized that the document

7

had been forged and that the financial statements were fabricated.

22.     Dreier has confessed to the pertinent aspects of his scheme. He admitted that

- The notes were fictitious.

- The notes had never been issued by the Developer.

- The Developer had never authorized him to market the notes.

- He had fabricated and forged documents evidencing that the notes had been issued by the Developer to the original holder even though the original holder may never have purchased any notes issued by the Developer. In that connection, he or his confederates forged the signature of the Developer's CEO.

- The Developer's financial statements and audit opinions were fabrications.

- He knew that that the Developer's financial statements and audit opinions had been distributed to Hedge Fund II and Hedge Fund III without disclosure that they were false.

23.     Sometime shortly before Hedge Fund III discovered Dreier's fraud, Hedge Fund

II, at Dreier's instruction, wired $13.5 million in payment for certain of the fictitious Developer

notes to the Dreier Account. When Hedge Fund II learned of Hedge Fund III's discovery, it

demanded that Dreier refund its money, and Dreier complied.

## CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5

24.     The Commission repeats and realleges the allegations contained in paragraphs 1

through 23 by reference as if fully set forth herein.

25.     Dreier's misrepresentations and omissions described above were material, and

Dreier made them either knowingly or recklessly.

26.     Defendant, directly and indirectly, singly and in concert, knowingly or recklessly,

8

by the use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or by the use of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, has: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities or other persons.

27.     By reason of the acts, omissions, practices, and courses of business set forth in this complaint, Defendant has violated, is violating, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Commission respectfully requests that the Court:

1.     Enter a final judgment:

(A)     Permanently restraining and enjoining the Defendant, his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

(B)     Directing Defendant to disgorge ill-gotten gains obtained through the violative conduct alleged in this complaint and directing Defendant to pay prejudgment interest

9

thereon;

    (C) Directing Defendant to pay civil money penalties pursuant to Section

20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d) of the Exchange Act, 15 U.S.C.

§ 78u(d);

  2. Grant the temporary and preliminary relief sought by the Commission in the

application filed herewith; and

  3. Grant such other and further relief as the Court deems appropriate.

Dated: December 8, 2008
   New York, New York

       Respectfully submitted,

       SECURITIES AND EXCHANGE COMMISSION


      By: _____
         Nancy A. Brown

       New York Regional Office
       3 World Financial Center
       Room 400
       New York, New York 10281
       (212) 336-1023


Of Counsel:

Andrew M. Calamari
Leslie Kazon
James Burt IV
Lucas M. Fitzgerald

10