JAMES CLARKSON
ACTING REGIONAL DIRECTOR
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – RM 400
New York, NY 10281
(212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
:
Plaintiff,    :
:       08 Civ. _____ ( )
- against -    :
:
MARC S. DREIER,    :
:
Defendant.    :
------------------------------------------------------------x

### DECLARATION OF JOHN PROVENZANO IN SUPPORT OF PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, ASSET FREEZE, ORDER TO SHOW CAUSE AND OTHER RELIEF

I, John Provenzano, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been employed as the Controller of Dreier LLP since August 2005. I make this Declaration in support of the Commission's Emergency Application for Temporary Restraining Order, Asset Freeze, Preliminary Injunction, Order to Show Cause, and Other Relief (the "Application") in this action. I am fully familiar with the facts and circumstances had herein.

2. As of December 4, 2008, Dreier LLP was a law firm of approximately 250 attorneys. As Controller, I am responsible for preparing the firm's financial statements, and oversight of the firm's billing, accounts receivable, accounts payable and employee

expenses. At the request of Marc Dreier, I was not responsible for oversight of the firm's escrow accounts, although I am familiar, to the extent detailed herein, with certain facts relating to those accounts.

3. Dreier LLP is affiliated with the following ten entities:

>Schlesinger Gannon & Lazetera LLP
>Berry Block & Bernstein LLC
>Dreier LLP (Stamford, CT)
>Dreier LLP (Pittsburgh, PA)
>Pitta & Dreier LLP
>Pitta, Bishop, Del Giorno & Dreier LLP
>Dreier Stein Kahan Browne Woods George LLP
>Mason Miller, LLP
>Entertainment Strategies Group
>Dreier Sports Opportunities Group LLC

Each of these affiliates generally operated under essentially the same agreement with Marc Dreier. Pursuant to the typical affiliate agreement with Mr. Dreier, the affiliates deposited their revenues into an account over which Mr. Dreier had shared control, and Mr. Dreier would pay their expenses. In return, Mr. Dreier agreed to pay each of the "partners" or "principals" of the affiliates both (1) a fixed salary; and (2) incentive compensation determined by the amount by which each "partner" or "principal" exceeded his or her agreed upon revenue target.

4. As Controller of Dreier LLP, I prepared financial statements of Dreier LLP that consolidated the individual financial statements of the affiliates into Dreier LLP.

5. While I have been employed by Dreier LLP, Roseann Letizia has been the Dreier LLP employee responsible for the firm's escrow accounts. I had access to information about the accounts, such as the amounts deposited there, but I was not responsible for reconciling the accounts or monitoring their activity. Since I have been at

Dreier LLP, Marc Dreier had been the sole signatory on the Dreier LLP escrow accounts (except for certain Dreier LLP escrow accounts in the name of certain Dreier LLP affiliates) and only he was authorized to direct movement of funds in and out of those accounts.

6. Dreier LLP maintains approximately eight escrow accounts into which client funds were deposited and co-mingled. Dreier LLP also maintains approximately eight escrow accounts set up for individual clients into which only a single client's funds were deposited.

7. On Monday, December 1, 2008, Norman Kinel, a partner at Dreier LLP, emailed Roseann Letizia with a copy to Marc Dreier and me to request that the firm disburse approximately $38 million from the firm's escrow accounts on behalf of Mr. Kinel's client, 360 Networks. At the time of his request, the firm's escrow accounts contained only about $19 million, far less than the amounts that were needed to make the payment on behalf of 360 Networks.

8. On Wednesday, December 3, or Thursday, December 4, in a telephone conversation with Mr. Dreier, and two or three Dreier LLP "partners," Mr. Dreier was asked about the missing 360 Networks' money. He told us in sum and substance that if he had been able to return to New York, he would have been able to return the money and that he could have sold some of his art collection to do so.

9. Mr. Dreier called me in a separate call on Wednesday, December 3. In that call, he asked me to wire approximately $8 million from the remaining monies in the firm's escrow accounts to three different accounts, all controlled by him. I did not make the wire transfers.

10. On Thursday, December 4, 2008, Mr. Dreier called me again from Canada. This time, Mr. Dreier instructed me to wire $10 million from one of the firm's escrow account to one of his personal accounts. I told him that I would not effect the transfer. He asked me to connect him to someone at the firm's bank, and I did so, and I heard him instruct the bank employee to make the transfer.

11. Marc Dreier also authorized additional transfers out of the firm's escrow accounts to clients. On Wednesday, December 3, or Thursday, December 4, in a telephone call in which I participated, a Dreier LLP "partner" asked him to authorize the return of client funds in the amounts of $3.048 million and $441,000. Mr. Dreier authorized the return of those funds and I effected the transfers. Since that time, I have been asked by three or four other Dreier LLP attorneys to return their clients' funds, but I have not done so.

12. Since I have been employed by the firm, I am aware of the disbursement of approximately $30 to $40 million out of Dreier LLP accounts in payment for certain works of art. Some of those works were hanging in the firm's offices as of at least December 5, 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 8, 2008
Stamford, Connecticut

John Provenzano